## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

JOSHUA HOUSTON,

                    Plaintiff,

v.

Village of Calumet Park, Calumet Park Officer
Mario Smith, City of Blue Island, Blue Island
Officer David Nedved, City of Oak Forest, Oak
Forest Officer Gregory Okon, Village of South
Holland, South Holland Officer Chuck Leyden,
Village of Burnham, Burnham Officer Daley,
Village of Lancing, Lancing Officer M.
Rodriguez.

                    Defendants.

Case No. 16 C 8646

### Second Amended Complaint at Law

Now Comes the Plaintiff, JOSHUA HOUSTON, by and through his attorneys, BURKE

WISE MORRISSEY & KAVENY LLC, and complaining of Defendants VILLAGE OF

CALUMET PARK, CALUMET PARK OFFICER MARIO SMITH, CITY OF BLUE ISLAND,

BLUE ISLAND OFFICER DAVID NEDVED, CITY OF OAK FOREST, OAK FOREST

OFFICER GREGORY OKON, VILLAGE OF SOUTH HOLLAND, SOUTH HOLLAND

OFFICER CHUCK LEYDEN, VILLAGE OF BURNHAM, BURNHAM OFFICER DALEY,

VILLAGE OF LANSING, LANSING OFFICER M. RODRIGUEZ alleges as follows:

### Jurisdiction and Venue

1.    This is an action for damages brought pursuant to 42 U.S.C. § 1983 to redress the

deprivation under color of law of Plaintiff's rights as secured by the United States Constitution

and under the laws of the State of Illinois.

2.    This court has original jurisdiction pursuant to 28 U.S.C. §§§ 1331 and 1343 over

Plaintiff's cause of action arising under the Constitution of the United States pursuant to 42 U.S.C.

§ 1983.

3.      This court has supplemental jurisdiction of Plaintiff's causes of action arising under the Illinois state law pursuant to 28 U.S.C. § 1367.

4.      Venue is proper under 28 U.S.C. § 1391(b), in that all of the claims and events giving rise to this action occurred in this district.

## Parties

5.      At all relevant times, Plaintiff Joshua Houston, was a resident of Calumet Park, County of Cook and the State of Illinois.

### Village of Calumet Park

6.      At all relevant times, Defendant the Village of Calumet Park ("Calumet Park"), was and is a municipal corporation duly incorporated under the laws of the State of Illinois, and was the employer and principal of Defendants Officer Mario Smith ("Defendant Smith").

7.      Defendant Calumet Park is named as an indemnitor and is responsible under *respondeat superior* for the actions of Defendants Officer Mario Smith.

8.      At all relevant times referenced herein, Defendant Smith was employed by the Calumet Park as a sworn police officer and member of the South Suburban Major Crimes Task Force. He is being sued in his individual capacity. At the time of the incident in this complaint, Defendant Smith was engaged in the conduct complained of while acting within the scope of his employment and under the color of state law.

### City of Blue Island

9.      At all relevant times, Defendant City of Blue Island ("Blue Island"), was and is a municipal corporation duly incorporated under the laws of the State of Illinois, and was the employer and principal of Defendant Officer David Nedved ("Defendant Nedved").

10.     At all relevant times, Defendant Blue Island was and is a municipal corporation

maintaining, as a division of said Municipal Corporation, a certain police department, commonly referred to as the Blue Island Police Department.

11.     Defendant Blue Island is named as an indemnitor and is responsible under *respondeat superior* for the actions of Defendant Nedved.

12.     At all relevant times referenced herein, Defendant Nedved was employed by Blue Island as a sworn police officer and member of the South Suburban Major Crimes Task Force. He is being sued in his individual capacity. At the time of the incident in this complaint, Defendant Nedved was engaged in the conduct complained of while acting within the scope of his employment and under the color of state law.

**City of Oak Forest**

13.     At all relevant times, Defendant City of Oak Forest ("Oak Forest"), was and is a municipal corporation duly incorporated under the laws of the State of Illinois, and was the employer and principal of Defendant Officer Gregory Okon ("Defendant Okon").

14.     At all relevant times, Defendant Oak Forest was and is a municipal corporation maintaining, as a division of said Municipal Corporation, a certain police department, commonly referred to as the Oak Forest Police Department.

15.     Defendant Oak Forest is named as an indemnitor and is responsible under *respondeat superior* for the actions of Defendant Okon.

16.     At all relevant times referenced herein, Defendant Okon was employed by Oak Forest as a sworn police officer and member of the South Suburban Major Crimes Task Force. He is being sued in his individual capacity. At the time of the incident in this complaint, Defendant Okon was engaged in the conduct complained of while acting within the scope of his employment and under the color of state law.

**Village of South Holland**

17.    At all relevant times, Defendant Village of South Holland ("South Holland"), was and is a municipal corporation duly incorporated under the laws of the State of Illinois, and was the employer and principal of Defendant Officer Chuck Leyden ("Defendant Leyden").

18.    At all relevant times, Defendant South Holland was and is a municipal corporation maintaining, as a division of said Municipal Corporation, a certain police department, commonly referred to as the South Holland Police Department.

19.    Defendant City of South Holland is named as an indemnitor and is responsible under *respondeat superior* for the actions of Defendant Leyden.

20.    At all relevant times referenced herein, Defendant Leyden was employed by South Holland as a sworn police officer and member of the South Suburban Major Crimes Task Force. He is being sued in his individual capacity. At the time of the incident in this complaint, Defendant Leyden was engaged in the conduct complained of while acting within the scope of his employment and under the color of state law.

**Village of Burnham**

21.    At all relevant times, Defendant Village of Burnham ("Burnham"), was and is a municipal corporation duly incorporated under the laws of the State of Illinois, and was the employer and principal of Defendant Officer Daley ("Defendant Daley").

22.    At all relevant times, Defendant Burnham was and is a municipal corporation maintaining, as a division of said Municipal Corporation, a certain police department, commonly referred to as the Burnham Police Department.

23.     Defendant Burnham is named as an indemnitor and is responsible under *respondeat superior* for the actions of Defendant Daley.

24.     At all relevant times referenced herein, Defendant Daley was employed by Burnham as a sworn police officer, through the Village of Burnham and a member of the South Suburban Major Crimes Task Force. He is being sued in his individual capacity. At the time of the incident in this complaint, Defendant Daley was engaged in the conduct complained of while acting within the scope of his employment and under the color of state law.

**Village of Lansing**

25.     At all relevant times, Defendant Village of Lansing ("Lansing"), was and is a municipal corporation duly incorporated under the laws of the State of Illinois, and was the employer and principal of Defendant Officer M. Rodriguez ("Defendant Rodriguez").

26.     At all relevant times, Defendant Lansing was and is a municipal corporation maintaining, as a division of said Municipal Corporation, a certain police department, commonly referred to as the Lancing Police Department.

27.     Defendant Burnham is named as an indemnitor and is responsible under *respondeat superior* for the actions of Defendant Rodriguez.

28.     At all relevant times referenced herein, Defendant Rodriguez was employed by Lansing as a sworn police officer and member of the South Suburban Major Crimes Task Force. He is being sued in his individual capacity. At the time of the incident in this complaint, Defendant Lansing was engaged in the conduct complained of while acting within the scope of his employment and under the color of state law.

<u>Facts Applicable to All Counts</u>

**Incident**

29.     On September 1, 2014, Plaintiff Joshua Houston was an eighteen-year old black student. In the afternoon, he left his home in Calumet Park to accompany friends located at an address near 126th Street and Elizabeth Street in Calumet Park, Illinois.

5

30.     Plaintiff's friends who were located at that address included Keenan Holden (male, black, 5'11" and short hair), Antoine Hull (male, black, 5'5", dreadlocks), Devonte Jenkins aka "Debo" (male, black, 5'10", short hair), Jarod Houston (male, black, 5'10", dreadlocks), Marshawn Johnson (male, black, 6'3", short hair) and Eric Neely (male, black, 5'9", short hair).

31.     Anita Robinson ("Robinson") was an eighteen year old female that had previously argued with Keenan Holden ("Holden") through social media. On September 1, 2014 at approximately 2:00 p.m., she was driving her car along Elizabeth Street when she encountered 6-8 male blacks standing on the sidewalk. As Robinson drove by, Holden spit on her through the open window of the car.

32.     Robinson telephoned her brother Anthony McMillen ("McMillen") at his home located at 12319 Throop Calumet Park, Illinois. Robinson gave McMillen an account of what occurred and a description of Holden. McMillen then proceeded to 126th and Elizabeth Street to confront Holden.

33.     As McMillen approached he questioned Holden and the others, "who spit on my sister." McMillen allegedly began reaching towards his waistband when someone from the group of Holden, Antoine Hull ("Hull"), Devonte Jenkins ("Jenkins" AKA "Debo"), Jarod Houston ("Jarod"), and Eric Neely ("Neely) fired 3 to 4 shots striking McMillen in the head resulting in his death.

34.     Plaintiff was in no way involved in the verbal argument McMillen or his subsequent shooting. There was no physical evidence including, but not limited to, video surveillance, cellular data, gunshot residue, gun shell casings or a weapon(s) indicating that Plaintiff was involved in the shooting.

**Investigation**

35.     On September 1, 2014 at approximately 4:30 p.m. the Calumet City Police Department contacted the South Suburban Major Crime Task Force ("SSMCTF") for assistance on the investigation.

36.     The SSMCTF is an organization that consists of over 54 South Suburban Police Departments that have assigned law enforcement personnel to investigate real or suspected violent crimes.

37.     Various Calumet Park Police Department officers and members of the SSMCTF were dispatched to the scene to conduct eyewitness interviews.

**Eyewitness Identifications**

**Theophilus Stanton**

38.     Theophilus Stanton lived at 12602 S. Elizabeth Street, Calumet Park at all times relevant to this complaint. On September 1st, Mr. Stanton informed Officer Randall and other members of the SSMCTF the following information.

39.     On the afternoon of September 1st, Mr. Stanton was at his house when he heard four gunshots. Mr. Stanton immediately proceeded to his front yard where he observed the victim Anthony McMillen lying in the street and a Black Monte Carlo immediately adjacent to the body.

40.     Mr. Stanton observed a male black with dreadlocks enter the Monte Carlo and drive away from the scene. Mr. Stanton also observed two other male blacks with dreadlocks running eastbound from the scene. Mr. Stanton never described an individual matching the description of Plaintiff at the scene.

41.     On September 3rd, Officer Randall and other members of the SSMCTF conducted a photograph spread with Mr. Stanton at the intersection of 111th Street and Halsted. Mr. Stanton

was unable to positively identify any individuals. On September 3rd, Inv. Randall and other members of the SSMCTF conducted a physical lineup with Mr. Stanton at Riverdale Police Department. Mr. Stanton was again unable to positively identify any individuals.

42.     Officer Randall and other members of SSMCTF prevented Mr. Stanton from participating in a photograph or physical lineup that included Joshua Houston because they knew he would not identify Plaintiff as the shooter.

**Tabitha Burton**

43.     Tabitha Burton was an Emergency Medical Technician ("EMT") that lived at 12546 S. Elizabeth Street, Calumet Park at all times relevant to this complaint. On September 1st, Ms. Burton informed Defendant Nedved, Officer Summers and other members of the SSMCTF the following information.

44.     On the afternoon of September 1st, Ms. Burton was at her home when she heard people yelling outside. Ms. Burton immediately proceeded to her front window and observed a male black (Suspect #1) walk in front of a black Monte Carlo and fire a gun at McMillen.

45.     Ms. Burton observed Suspect #1 and another male black (Suspect #2) run eastbound towards the alley between two homes. Ms. Burton then observed a male black with dreadlocks (Suspect #3) approach the victim and shoot him in the head before walking to the Monte Carlo and leaving the scene.

46.     Ms. Burton took a video of the scene immediately after the shooting. The recording was reviewed by Defendant Nedved and other members of the SSMCTF but discounted as containing "nothing of note."

47.     On September 2nd, Ms. Burton was transported to the Calumet Park Police Department in order to participate in a photograph/physical lineup and provide a video statement to Officer

Summers and Cook County Assistant State's Attorney ("ASA") Michelle Spizzirri.

48.     Prior to providing the videotaped statement, Ms. Burton saw Jarod Houston in the police station hallway and later informed Officer Summers and ASA Spizzirri that Jarod Houston "looks just like" the man with dreadlocks she saw shoot McMillan and drive away in the Monte Carlo.

49.     Officer Summers, Defendant Nedved and other members of the SSMCTF prevented Ms. Burton from participating in a photograph or physical lineup that included Jarod Houston despite her positively identifying him as one of the shooters.

50.     Officer Summers, Defendant Nedved and other members of the SSMCTF prevented Ms. Burton from participating in a photograph or physical lineup that included Jarod Houston in a concerted effort to falsely arrest and charge Plaintiff with the murder of McMillen.

51.     On September 2nd, Officer Summer, Defendant Leyden, Defedant Nedved and other members of the SSMCTD also conducted a physical lineup with Ms. Burton at the Blue Island Police Department.

52.     Ms. Burton viewed a physical lineup that included Joshua Houston but did not include Keenan Holden, Eric Neely or Devonte Jenkins. Ms. Burton - despite witnessing the shooting in its entirety - did not identify Joshua Houston as one of the shooters.

53.     Officer Summers, Defendant Nedved and other members of the SSMCTF prevented Ms. Burton from participating in a photograph or physical lineup that included Keenan Holden, Eric Neely or Devonte Jenkins because they knew she would identify one of them as the shooter.

54.     Officer Summers, Defendant Nedved and other members of the SSMCTF prevented Ms. Burton from participating in a photograph or physical lineup that included Keenan Holden, Eric Neely or Devonte Jenkins in a concerted effort to falsely arrest and charge Plaintiff with the murder of McMillen.

**Sandra Brown**

55.     Sandra Brown lived at 12623 S. Elizabeth Street, Calumet Park at all times relevant to this complaint. On September 1st, Ms. Brown initially informed Defendant Nedved and Defendant Leyden during a field interview that she heard gunshots and proceeded to the window at the front of her house.

56.     Ms. Brown then allegedly observed two male blacks running northbound on Elizabeth away from her home, with one suspect holding a gun in his hand. Defendant Nedved and Defendant Leyden's interview note(s) indicate that Ms. Brown did not know if she could identify the individual holding the gun.

57.     Defendant Nedved and Defendant Leyden generated a report purportedly detailing their conversation with Ms. Brown. The report changed Ms. Brown's observation of two male blacks running southbound, not northbound, on Elizabeth Street. The report also changed Ms. Brown's observations to state that the two male blacks ran past the side of her house.

58.     Defendants changed Ms. Brown's statement regarding which direction the two suspects were running because they knew she could not "positively" identify the suspects if they were running northbound away from her house.

59.     The report states that Ms. Brown described Suspect #1 as light skinned, 5'08" to 5'10" tall, with short hair and observed him holding a handgun. Ms. Brown described Suspect #2 as light skinned, 5'08" to 5'10" tall, with short hair and did not observe him with a gun.

60.     On September 2nd, Defendant Nedved conducted a photograph spread with Ms. Brown at her home.  The photograph spread included Joshua Houston but Ms. Brown did not identify him as the individual holding the gun.

61.     On September 2nd, Defendant Nedved and Defendant Leyden transported Ms. Brown to the Blue Island Police Department.  Defendant Nedved and Defendant Leyden conducted a second photograph spread where Ms. Brown once again failed to identify Plaintiff as the individual holding the gun.  Both photograph spreads failed to include Keenan Holden, Eric Neely or Devonte Jenkins aka "Debo" despite these individuals matching her description as light skinned black males with short hair.

62.     Defendant Nedved and Defendant Leyden proceeded to conduct a physical lineup that included Joshua Houston. Ms. Brown was initially unable to identify Plaintiff when he was standing with the other individuals. It was not until Defendant Nedved and Defendant Leyden called Plaintiff individually to the two-way mirror in an overly suggestive and coercive manner, that Ms. Brown allegedly identified Plaintiff as the individual holding the gun.

63.     Defendant Nedved, Defendant Leyden and other members of SSMCTF prevented Ms. Brown from participating in a photograph or physical lineup that included Keenan Holden, Eric Neely or Devonte Jenkins because she would likely identify one of them as the suspect holding the gun.

64.     Defendant Nedved, Defendant Leyden and other members of the SSMCTF prevented Ms. Brown from participating in a photograph or physical lineup that included Keenan Holden, Eric Neely or Devonte Jenkins in a concerted effort to falsely arrest and charge Plaintiff with the murder of McMillen.

**Interrogation of Keenan Holden**

65.     On September 1, 2014 at approximately 8:00 p.m., Keenan Holden was transported to the Calumet Park Police Department. Over the next 72 hours Holden was placed in a holding cell and repeatedly and coercively interrogated regarding his involvement in the shooting.

11

66.     On September 1st, Defendant Okon and Officer Grab interrogated Holden in an interview room located at CCPD. During the initial interrogation, Holden admitted that he had spit on Robinson but denied any knowledge of the shooting.

67.     Over the 12 hours Defendant Okon, Officer Grab and other members of the SSMCTF threatened Holden with physical violence and stated that he would be charged with McMillen's murder if he did not "identify" the shooter.  Defendant Okon and Officer Grab's report

68.     On September 2nd, Defendant Okon and Officer Grab interrogated Holden for a second time regarding his involvement in the shooting. As a result of their threats and coercion, Holden provided the false statement that as he was leaving the scene when he "looked back" and observed Plaintiff fire a "blue steel revolver" at McMillen before leaving the scene with Plaintiff in a vehicle. Holden concluded by stating that Plaintiff had discarded the gun on Racine Avenue.

69.     Defendant Okon, Officer Grab and other defendant members of the SSMCTF continued their investigation by questioning individuals and searching the neighborhood where the shooting occurred.  During their continued investigation, Defendant Okon, Officer Grab and other defendant members of the SSMCTF learned that Plaintiff never entered a vehicle with Holden, that there was no "blue steel revolver" used in the shooting, and that no weapon was recovered on Racine Avenue.

70.     As a result of these inconsistencies, Officer Shefcik and Officer Gainer interrogated Holden for second time on September 2nd at approximately 6:30 p.m. During this interrogation, Holden finally provided an accurate statement of what occurred.

71.     Holden stated that himself, Hull, Jenkins aka "Debo", Neely, Malcom Shorters ("Shorters") and Plaintiff were standing outside when McMillen approached the group asking "which one of you spit on my sister."

72.     Holden then observed Jenkins aka "Debo" proceed to the side of the house located at 12612

12

S. Elizabeth Street and retrieve a handgun. Holden confirmed he had previously seen Debo with this same gun. Holden then observed Debo fire the gun at McMillen before he fled the scene in a vehicle with Marshawn Johnson, Shorters and Hull.

73.     Officer Shefcik and Officer Gainer realized Holden's accurate account of the shooting would undermine the Defendants' preordained determination to arrest Plaintiff as the shooter. As a result, Officer Schefcik and Officer Gainer continued to interrogate Holden in an attempt to falsely implicate Plaintiff. Holden responded by shaking and crying before repeating that "Debo shot him." Holden was placed in a holding cell for the remainder of the night.

74.     On September 2nd, Defendant Smith and other members of the SSMCTF decided to arrest Plaintiff for murder. Defendant Smith At the time of Plaintiff's arrest, the Defendants knew the following: that eyewitness Burton described the shooter as having dreadlocks and affirmatively identified Jarod Houston at the police station as the shooter, that eyewitness Brown failed to identify Plaintiff in two separate phone lineups, that Defendant Nedved and Defendant Leyden induced Brown to identify Plaintiff in an unnecessarily suggestive physical lineup, and that Holden had identified "Debo" as the shooter. As a result, Defendants clearly lacked sufficient probable cause to arrest Plaintiff for such a charge.

75.     On September 3rd at approximately 10:45 a.m., Defendant Daley and Defendant Rodriguez interrogated Holden for a third time. Defendant Okon, Defendant Daley, Defendant Rodriguez and other defendant members of the SSMCTF realized that Holden's recent statement identifying Debo as the shooter would jeopardize their decision to arrest Plaintiff as the shooter.

76.     As a result, Defendant Okon, Defendant Daley, Defendant Rodriguez and other members of the SSMCTF continued to threaten Holden with physical violence and stated that he would be charged with murder if he failed to identify Plaintiff as the shooter.

77.     Defendant Okon, Defendant Daley, Defendant Rodriguez and other members of the SSMCTF also provided Holden with the description of the alleged murder weapon as ".38 caliber hand gun, Black in color with a 2" barrel and tape on the handle."

78.     Defendant Okon, Defendant Daley, Defendant Rodriguez and other defendant members of the SSMCTF provided Holden with the description of the alleged murder weapon after a picture of said weapon was recovered from another suspect's cellphone.

79.     During his 72 hour detainment Holden either denied there was a shooting, denied Plaintiff's involvement in the shooting, or stated that an individual other than Plaintiff actually shoot McMillen.

80.     During his 72 hour detainment, Defendant Okon, Defendant Daley, Defendant Rodriguez and other defendant members of the SSMCTF threatened, coerced, and provided independent information to Holden in a concerted effort to falsely arrest and charge Plaintiff with the murder of McMillen. Defendants then falsified reports concealing their conduct and submitted these reports to prosecutors who relied on them in pursuing charges against Plaintiff.

**Interrogation and Arrest of Joshua Houston**

81.     In the afternoon of September 2nd, Plaintiff was handcuffed and forced into an unmarked squad car by Defendant Smith. Plaintiff was then transported to the Calumet Park Police Department for questioning.

82.     Shortly thereafter, Plaintiff was transported to the Blue Island Police Department where he remained until the early morning of September 4th. During the approximately two days Plaintiff was detained at the Blue Island Police Department he was consistently handcuffed and isolated in a cell.

83.     During the approximately two days Plaintiff was detained at the Blue Island Police

14

Department he was questioned regarding his alleged involvement in the shooting. During Plaintiff's entire detainment until his release from custody on January 13, 2016, he consistently denied any involvement in the shooting death of McMillen.

84. From September 2nd until September 4th, Defendant Okon and other members SSMCTF obtained both search warrants and/or written consents to electronically search the cellular phone data of Plaintiff, Keenan Holden, Jarod Houston, Daniel Younger and Kevon Huff. The electronic searches included all telephone calls, text messages, pictures, and social media postings from these various cellular phones. However, not a single piece of information gathered from these searches implicated, let alone confirmed, that Plaintiff was the shooter.

85. Defendant Smith was the officer responsible for taking Plaintiff into custody, coordinating the investigation, creating the "Investigative Summary" report, and serving as the "prosecuting witness" that ultimately recommended that Plaintiff be charged with murder.

86. On September 4th, the Cook County State's Attorney's Office ("CCSAO") approved charging Plaintiff with the murder of Anthony McMillen and his bond was set at a $1,000,000 D-Bond. The CCSAO decision to approve murder charges against Plaintiff was a result of Defendants purposeful and malicious conduct of falsifying reports, fabricating evidence, and deliberately withholding or concealing exculpatory evidence in a concerted effort to mislead and misdirect the criminal prosecution of Plaintiff.

87. As a direct and proximate result of Defendants misconduct, Plaintiff spent the next seventeen months incarcerated in various maximum security divisions at the Cook County Department of Corrections.

88. On December 23, 2015, prosecutors from the CCSAO subpoenaed Theophilus Stanton, Tabitha Burton, Sandra Brown, and Keenan Holden to testify at trial on January 13, 2016.

89.     On January 13, 2016, the CCSAO prosecutor spoke with one or more of these witnesses and each of them either recanted their prior statements or restated Plaintiff's lack of involvement in the shooting. Importantly, Holden recanted his statement implicating Plaintiff as the shooter. As a result, the CCCSAO immediately dismissed all the charges against Plaintiff via *nolle proseui*.

90.     The CCSAO's decision to dismiss the charges against Plaintiff was based on their acknowledgement that the State could not satisfy its burden of proof and indicative of Plaintiff's innocence.

91.     As a direct and proximate result of the objectively unreasonable, willful, wanton, and malicious actions of the Defendants, Plaintiff suffered without limitation the following injuries and damages:

      a.      Violation of his constitutional rights under the Fourth, Fifth, and Fourteenth Amendments;

      b.      Loss of his physical liberty;

      c.      Physical abuse;

      d.      Psychological abuse and mental coercion;

      e.      Mental and emotional trauma; and

      f.      Monetary and economic loss.

**Count I – Fourth Amendment Unlawful Pretrial Detention**
**42 U.S.C. § 1983**

1.     Each paragraph of this Complaint is incorporated as if restated fully herein.

2.     The Defendant Officers accused Plaintiff of criminal activity knowing those accusations to be without genuine probable cause, and they submitted reports and statements to prosecutors with the intent of instituting and continuing judicial proceedings.

3.      The Defendants caused Plaintiff to be improperly subjected to judicial proceedings for

which there was no probable cause. These judicial proceedings were instituted and continued maliciously, resulting in injury.

4.     As described more fully above, the Defendant Officers, while acting individually, jointly, and in conspiracy with other unnamed individuals, as well as under color of law and within the scope of their employment, deprived Plaintiff of his constitutional rights by the following:

a.     Deliberately withheld and concealed exculpatory evidence including but not limited to their misconduct as detailed in sections b through f;

b.     Deliberately used improper and suggestive procedures to taint the pretrial identifications of Plaintiff and caused Plaintiff to be misidentified as the perpetrator;

c.     Deliberately provided information to witnesses that was beyond their personal knowledge in an attempt to bolster their statements, including a description of the murder weapon;

d.     Deliberately fabricating evidence including but not limited to falsifying police reports and falsifying witness statements in an attempt to implicate Plaintiff as the perpetrator;

e.     Deliberately destroyed evidence and witness statements in an attempt to implicate Plaintiff as the perpetrator;

f.     Deliberately and coercively obtained false statements and identifications from various witnesses.

5.     The Defendant Officers continued to mislead and misdirect the criminal prosecution of Plaintiff during the pendency of his seventeen month detainment at CCDOC. The Defendant Officers actions were not discovered by the CCSAO until the prosecutor subpoenaed and spoke with alleged witnesses.

6.     As a result of the witnesses recanting their alleged identifications and statements, the CCSAO dismissed all charges against Plaintiff on January 13, 2016.

7.     The Defendant Officers' misconduct directly and proximately resulted in Plaintiff suffering violations of his constitutional rights, loss of liberty, monetary expenses, emotional distress, and

other injuries.

8.      The misconduct described in this Count I was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

WHEREFORE, Plaintiff demands compensatory damages, jointly and severally from Defendants, and, because these Defendants acted in a malicious, willful and/or wanton manner toward Plaintiff, for punitive damages, plus the costs of this action and whatever additional relief this Court deems equitable and just.

**Count II – Fourth Amendment False Arrest**
**42 U.S.C. § 1983**

1.      Each paragraph of this Complaint is incorporated as if restated fully herein.

2.      The Defendant Officers accused Plaintiff of criminal activity knowing those accusations to be without genuine probable cause, and they submitted reports and statements to prosecutors with the intent of instituting and continuing judicial proceedings.

3.       The Defendants caused Plaintiff to be improperly subjected to judicial proceedings for which there was no probable cause. These judicial proceedings were instituted and continued maliciously, resulting in injury.

4.      As described more fully above, the Defendant Officers, while acting individually, jointly, and in conspiracy with other unnamed individuals, as well as under color of law and within the scope of their employment, deprived Plaintiff of his constitutional rights by the following:

   a.      Deliberately withheld and concealed exculpatory evidence including but not limited to their misconduct as detailed in sections b through f;

   b.      Deliberately used improper and suggestive procedures to taint the pretrial identifications of Plaintiff and caused Plaintiff to be misidentified as the perpetrator;

   c.      Deliberately provided information to witnesses that was beyond their personal knowledge in an attempt to bolster their statements, including a description of the

murder weapon;

d.    Deliberately fabricating evidence including but not limited to falsifying police reports and falsifying witness statements in an attempt to implicate Plaintiff as the perpetrator;

e.    Deliberately destroyed evidence and witness statements in an attempt to implicate Plaintiff as the perpetrator;

f.    Deliberately and coercively obtained false statements and identifications from various witnesses.

5.    The Defendant Officers continued to mislead and misdirect the criminal prosecution of Plaintiff during the pendency of his seventeen month detainment at CCDOC. The Defendant Officers actions were not discovered by the CCSAO until the prosecutor subpoenaed and spoke with alleged witnesses.

6.    As a result of the witnesses recanting their alleged identifications and statements, the CCSAO dismissed all charges against Plaintiff on January 13, 2016.

7.    The Defendant Officers' misconduct directly and proximately resulted in Plaintiff suffering violations of his constitutional rights, loss of liberty, monetary expenses, emotional distress, and other injuries.

8.    The misconduct described in this Count II was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

WHEREFORE, Plaintiff demands compensatory damages, jointly and severally from Defendants, and, because these Defendants acted in a malicious, willful and/or wanton manner toward Plaintiff, for punitive damages, plus the costs of this action and whatever additional relief this Court deems equitable and just.

**Count III – Fourth Amendment Malicious Prosecution**
**42 U.S.C. § 1983**

19

1.      Each paragraph of this Complaint is incorporated as if restated fully herein.[1]

2.      The Defendant Officers accused Plaintiff of criminal activity knowing those accusations to be without genuine probable cause, and they submitted reports and statements to prosecutors with the intent of instituting and continuing judicial proceedings.

3.      The Defendants caused Plaintiff to be improperly subjected to judicial proceedings for which there was no probable cause. These judicial proceedings were instituted and continued maliciously, resulting in injury.

4.      As described more fully above, the Defendant Officers, while acting individually, jointly, and in conspiracy with other unnamed individuals, as well as under color of law and within the scope of their employment, deprived Plaintiff of his constitutional rights by the following:

    a.      Deliberately withheld and concealed exculpatory evidence including but not limited to their misconduct as detailed in sections b through f;

    b.      Deliberately used improper and suggestive procedures to taint the pretrial identifications of Plaintiff and caused Plaintiff to be misidentified as the perpetrator;

    c.      Deliberately provided information to witnesses that was beyond their personal knowledge in an attempt to bolster their statements, including a description of the murder weapon;

    d.      Deliberately fabricating evidence including but not limited to falsifying police reports and falsifying witness statements in an attempt to implicate Plaintiff as the perpetrator;

    e.      Deliberately destroyed evidence and witness statements in an attempt to implicate Plaintiff as the perpetrator;

    f.      Deliberately and coercively obtained false statements and identifications from various witnesses.

---

[1] Plaintiff asserts his §1983 Malicious Prosecution claim based on the United States Supreme Court's recent ruling in *Manuel v. City of Joliet*, 2017 U.S. LEXIS 2021 (March 21, 2017). In particular, the Court overturned Seventh Circuit legal precedent holding that individuals cannot bring a Fourth Amendment claim contesting the legality of their pretrial confinement. 2017 U.S. LEXIS 2021 at *4. The Supreme Court remanded the matter to the Seventh Circuit to determine the "contours" of Manuel's Fourth Amendment claim and when that claim accrued. *Id.* at *19-20. Plaintiff pleads this §1983 Malicious Prosecution claim in anticipation that the Seventh Circuit will align itself with the other ten federal appellate courts that have adopted such a claim.

5.     The Defendant Officers continued to mislead and misdirect the criminal prosecution of Plaintiff during the pendency of his seventeen month detainment at CCDOC. The Defendant Officers actions were not discovered by the CCSAO until the prosecutor subpoenaed and spoke with alleged witnesses.

6.     As a result of the witnesses recanting their alleged identifications and statements, the CCSAO dismissed all charges against Plaintiff on January 13, 2016.

7.     The Defendant Officers' misconduct directly and proximately resulted in Plaintiff suffering violations of his constitutional rights, loss of liberty, monetary expenses, emotional distress, and other injuries.

8.     The misconduct described in this Count III was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

WHEREFORE, Plaintiff demands compensatory damages, jointly and severally from Defendants, and, because these Defendants acted in a malicious, willful and/or wanton manner toward Plaintiff, for punitive damages, plus the costs of this action and whatever additional relief this Court deems equitable and just.

### Count IV – Failure to Intervene
### 42 U.S.C. § 1983

1.     Each paragraph of this Complaint is incorporated as if restated fully herein.

2.     The Defendant Officers accused Plaintiff of criminal activity knowing those accusations to be without genuine probable cause, and they submitted reports and statements to prosecutors with the intent of instituting and continuing judicial proceedings.

3.     The Defendants caused Plaintiff to be improperly subjected to judicial proceedings for which there was no probable cause. These judicial proceedings were instituted and continued

maliciously, resulting in injury.

4.      As described more fully above, the Defendant Officers, while acting individually, jointly, and in conspiracy with other unnamed individuals, as well as under color of law and within the scope of their employment, deprived Plaintiff of his constitutional rights by the following:

    a.      Deliberately withheld and concealed exculpatory evidence including but not limited to their misconduct as detailed in sections b through f;

    b.      Deliberately used improper and suggestive procedures to taint the pretrial identifications of Plaintiff and caused Plaintiff to be misidentified as the perpetrator;

    c.      Deliberately provided information to witnesses that was beyond their personal knowledge in an attempt to bolster their statements, including a description of the murder weapon;

    d.      Deliberately fabricating evidence including but not limited to falsifying police reports and falsifying witness statements in an attempt to implicate Plaintiff as the perpetrator;

    e.      Deliberately destroyed evidence and witness statements in an attempt to implicate Plaintiff as the perpetrator;

    f.      Deliberately and coercively obtained false statements and identifications from various witnesses.

5.      The Defendant Officers continued to mislead and misdirect the criminal prosecution of Plaintiff during the pendency of his seventeen month detainment at CCDOC. Certain Defendant Officers knew that other Defendant Officers: deliberately withheld and concealed exculpatory evidence, used improper and suggestive identifications, provided witnesses information beyond their personnel knowledge, fabricated and falsified evidence including witness statements, and destroyed exculpatory evidence, all in an effort to falsely arrest, unlawfully detain and maliciously prosecute Plaintiff.

6.      These Defendant Officers had a realistic opportunity to prevent the misconduct of their fellow Officers but did nothing to prevent such conduct.

7.     The Defendant Officers' misconduct directly and proximately resulted in Plaintiff suffering violations of his constitutional rights, loss of liberty, monetary expenses, emotional distress, and other injuries.

8.     The misconduct described in this Count IV was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

WHEREFORE, Plaintiff demands compensatory damages, jointly and severally from Defendants, and, because these Defendants acted in a malicious, willful and/or wanton manner toward Plaintiff, for punitive damages, plus the costs of this action and whatever additional relief this Court deems equitable and just.

### Count V – Conspiracy to Deprive Constitutional Rights
### <u>42 U.S.C. § 1983</u>

1.     Each of the paragraphs of this Complaint is incorporated as if restated fully herein.

2.     As described more fully above, the Defendant Officers, while acting individually, jointly, and in conspiracy with other unnamed individuals, as well as under color of law and within the scope of their employment with South Suburban Major Crimes Task Force, reached an understanding, engaged and continued to engage in a course of conduct, and otherwise jointly acted and/or conspired among and between themselves to deliberately withhold and conceal exculpatory evidence, use improper and suggestive identifications, provide witnesses information beyond their personnel knowledge, fabricate and falsify evidence including witness statements, and destroy exculpatory evidence, all in an effort to falsely arrest, unlawfully detain and maliciously prosecute Plaintiff.

3.     Defendants' and their co-conspirators' overt acts, as set forth above, which were committed jointly and/or while conspiring together were with the knowledge and purpose of depriving Plaintiff his constitutional rights.

23

4.      The Defendant Officers' misconduct directly and proximately resulted in Plaintiff suffering violations of his constitutional rights, loss of liberty, monetary expenses, emotional distress, and other injuries.

5.      The misconduct described in this Count V was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

WHEREFORE, Plaintiff demands compensatory damages, jointly and severally from Defendants, and, because these Defendants acted in a malicious, willful and/or wanton manner toward Plaintiff, for punitive damages, plus the costs of this action and whatever additional relief this Court deems equitable and just.

## Count VI – Malicious Prosecution
## State Law Claim

1.      Each paragraph of this Complaint is incorporated as if restated fully herein.

2.      The Defendant Officers accused Plaintiff of criminal activity knowing those accusations to be without genuine probable cause, and they submitted reports and statements to prosecutors with the intent of instituting and continuing judicial proceedings.

3.      The Defendants caused Plaintiff to be improperly subjected to judicial proceedings for which there was no probable cause. These judicial proceedings were instituted and continued maliciously, resulting in injury.

4.      As described more fully above, the Defendant Officers, while acting individually, jointly, and in conspiracy with other unnamed individuals, as well as under color of law and within the scope of their employment, deprived Plaintiff of his constitutional rights by the following:

   a. Deliberately withheld and concealed exculpatory evidence including but not limited to their misconduct as detailed in sections b through f;

   b. Deliberately used improper and suggestive procedures to taint the pretrial identifications of Plaintiff and caused Plaintiff to be misidentified as the

perpetrator;

c.    Deliberately provided information to witnesses that was beyond their personal knowledge in an attempt to bolster their statements, including a description of the murder weapon;

d.    Deliberately fabricating evidence including but not limited to falsifying police reports and falsifying witness statements in an attempt to implicate Plaintiff as the perpetrator;

e.    Deliberately destroyed evidence and witness statements in an attempt to implicate Plaintiff as the perpetrator;

f.    Deliberately and coercively obtained false statements and identifications from various witnesses.

5.    The Defendant Officers continued to mislead and misdirect the criminal prosecution of Plaintiff during the pendency of his seventeen month detainment at CCDOC. The Defendant Officers actions were not discovered by the CCSAO until the prosecutor subpoenaed and spoke with alleged witnesses.

6.    As a result of the witnesses recanting their alleged identifications and statements, the CCSAO dismissed all charges against Plaintiff on January 13, 2016.

7.    The Defendant Officers' misconduct directly and proximately resulted in Plaintiff suffering violations of his constitutional rights, loss of liberty, monetary expenses, emotional distress, and other injuries.

8.    The misconduct described in this Count VI was objectively unreasonable and was undertaken with malice and willful indifference to Plaintiff's constitutional rights.

WHEREFORE, Plaintiff demands compensatory damages, jointly and severally from Defendants, and, because these Defendants acted in a malicious, willful and/or wanton manner toward Plaintiff, for punitive damages, plus the costs of this action and whatever additional relief this Court deems equitable and just.

## Count VII - Intentional Infliction of Emotional Distress
### State Law Claim

1.      Each paragraph of this Complaint is incorporated as if restated fully herein.

2.      As described more fully above, the Defendant Officers, while acting individually, jointly, and in conspiracy with other unnamed individuals, as well as under color of law and within the scope of their employment, their conduct was extreme and outrageous and went beyond all bounds of human decency.

3.      Defendant Officers participated in the extreme and outrageous conduct described above with the intention to inflict severe emotional distress upon Plaintiff or knew that there was a high probability that their conduct would do so.

4.      The Defendant Officers continued to mislead and misdirect the criminal prosecution of Plaintiff during the pendency of his seventeen month detainment at CCDOC. The Defendant Officers actions were not discovered by the CCSAO until the prosecutor subpoenaed and spoke with alleged witnesses.

5.      As a direct and proximate result of the extreme and outrageous conduct described above, Plaintiff suffered extreme emotional distress during the pendency of his incarceration which continues until this day.

WHEREFORE, Plaintiff demands compensatory damages, jointly and severally from Defendants, and, because these Defendants acted in a malicious, willful and/or wanton manner toward Plaintiff, for punitive damages, plus the costs of this action and whatever additional relief this Court deems equitable and just.

## COUNT VIII – Conspiracy
### State Law Claim

1.      Each of the paragraphs of this Complaint is incorporated as if restated fully herein.

2.     As described more fully above, the Defendant Officers, while acting individually, jointly, and in conspiracy with other unnamed individuals, as well as under color of law and within the scope of their employment with South Suburban Major Crimes Task Force, reached an understanding, engaged and continued to engage in a course of conduct, and otherwise jointly acted and/or conspired among and between themselves to deliberately withhold and conceal exculpatory evidence, use improper and suggestive identifications, provide witnesses information beyond their personnel knowledge, fabricate and falsify evidence including witness statements, and destroy exculpatory evidence, all in an effort to falsely arrest, unlawfully detain and maliciously prosecute Plaintiff.

3.     Defendants' and their co-conspirators' overt acts, as set forth above, which were committed jointly and/or while conspiring together were with the knowledge and purpose of depriving Plaintiff his constitutional rights.

4.     The Defendant Officers' misconduct directly and proximately resulted in Plaintiff suffering violations of his constitutional rights, loss of liberty, monetary expenses, emotional distress, and other injuries.

5.     The misconduct described in this Count VIII was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

WHEREFORE, Plaintiff demands compensatory damages, jointly and severally from Defendants, and, because these Defendants acted in a malicious, willful and/or wanton manner toward Plaintiff, for punitive damages, plus the costs of this action and whatever additional relief this Court deems equitable and just.

### Count IX - Respondeat Superior
### State Law Claim

1.     Each of the paragraphs of this Complaint is incorporated as if restated fully herein.

2.     As described more fully above, the Defendant Officers, while acting individually, jointly, and in conspiracy with other unnamed individuals, as well as under color of law and within the scope of their employment as members of the Village of Calumet Park, City of Blue Island, City of Oak Forest, Village of South Holland, Village of Lansing and Village of Burnham.

3.     The Village of Calumet Park, City of Blue Island, City of Oak Forest, Village of South Holland, Village of Lansing and Village of Burnham are liable as principal for all torts committed by their agents.

WHEREFORE, Plaintiff demands compensatory damages, jointly and severally from Defendants, and, because these Defendants acted in a malicious, willful and/or wanton manner toward Plaintiff, for punitive damages, plus the costs of this action and whatever additional relief this Court deems equitable and just.

### Count X - Indemnification
### State Law Claim

1.     Each of the paragraphs of this Complaint is incorporated as if restated fully herein.

2.     As described more fully above, the Defendant Officers, while acting individually, jointly, and in conspiracy with other unnamed individuals, as well as under color of law and within the scope of their employment as members of the Village of Calumet Park, City of Blue Island, City of Oak Forest, Village of South Holland, Village of Lansing and Village of Burnham Police Departments.

3.     Should the Defendant Officers be found liable on any one of the federal claims alleged herein, pursuant to the Illinois Tort Immunity Act, 745 ILCS 10/9-102, Defendants Village of Calumet Park, City of Blue Island, City of Oak Forest, Village of South Holland, Village of Lansing and Village of Burnham are liable for any judgments for compensatory damages arising in this case from the actions of the Defendant Officers.

Respectfully Submitted,

Joshua Houston

By:     */s/ Michael L. Gallagher*
        One of His Attorneys

Elizabeth A. Kaveny
Michael L. Gallagher
BURKE WISE MORRISSEY & KAVENY LLC
161 N. Clark Street, Suite 2240
Chicago, IL  60601
312.580.2040
Firm I.D. 46603